# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

GURGEN POGOSIAN,

        Petitioner,

    v.

JAMES JANECKA, in his official capacity as Warden, Adelanto ICE Processing Center,
TAE D. JOHNSON, Acting Director, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security, and
PAMELA JO BONDI, Attorney General of the United States,

        Respondents.

Case No. 5:26-cv-01249-JWH-MAA

**ORDER GRANTING IN PART PETITIONER'S *EX PARTE* APPLICATION FOR PRELIMINARY INJUNCTION [ECF No. 1]**

Before the Court is the petition of Petitioner Gurgen Pogosian, which the Court construes to include an *ex parte* application for a temporary restraining order (a "TRO") and a preliminary injunction to enjoin Respondents James Janecka, Tae D. Johnson, Kristi Noem, and Pamela Jo Bondi from continuing to detain Pogosian.[1]  The Court conducted a hearing on the Application on March 27, 2026, and at that hearing ordered supplemental briefing.  After considering the papers filed in support and in opposition,[2] as well as the parties' arguments at the hearing, the Court **GRANTS in part** Pogosian's Application for the reasons set forth below.

## I.  BACKGROUND

### A.  Factual Allegations

Pogosian, who was apparently born in Armenia and is a citizen of Russia,[3] entered the United States in October 2023.[4]  At the hearing on the Application, Pogosian's counsel represented that immigration authorities detained Pogosian at the point of entry and issued him Form I-94, which authorized him to be in the United States until October 7, 2026.[5]  Since his admission into the United

---

[1]     *See* Pet.'s Verified Pet. for Writ of Habeas Corpus (the "Application").

[2]     The Court considered the documents of record in this action, including the following papers:  (1) Application; (2) Resps.' Opp'n to the Application (the "Opposition") [ECF No. 6]; (3) Pet.'s Suppl. Evidence (the "Supplemental Evidence") [ECF No. 9]; and (4) Resps.' Suppl. Br. (the "Supplemental Opposition") [ECF No. 10].

[3]     In his Application, Pogosian alleges that he is a citizen of Armenia, but his immigration documents state that he is a citizen of Russia.  *See* Application ¶ 14; Supplemental Evidence, Exs. 5 ("Exhibit 5") & 6 ("Exhibit 6") [ECF No. 9-1].  Pogosian's country of citizenship does not impact the Court's analysis.

[4]     Exhibit 5.

[5]     *Id.*

States, Pogosian has resided in Southern California with his wife and minor son.[6] Pogosian and his family are respondents in removal proceedings, and they have asylum applications currently pending before the Immigration Court.[7]  On December 4, 2025, Pogosian was arrested by Los Angeles Police Department for receiving stolen property.[8]  However, no charges were filed against Pogosian related to that incident, and Pogosian has no other criminal record.[9]

On February 19, 2026,[10] Immigration and Customs Enforcement ("ICE"), apparently believing that Pogosian was present in the United States without an immigrant visa, detained Pogosian outside his home in Glendale, California.[11]  Ultimately, Respondents transported Pogosian to the ICE detention facility in Adelanto, California, where he remains in detention.[12] There are no facts indicating that Pogosian received any kind of pre-detention process, and on March 16, 2026, an Immigration Judge ("IJ") denied Pogosian bond, reasoning that Pogosian was detained pursuant to 8 U.S.C. § 1225 and that, therefore, he was ineligible for bond.[13]

---

[6]     Application ¶ 14.

[7]     *Id.*

[8]     Exhibit 6.

[9]     Application ¶ 18.

[10]    In their Opposition, Respondents represent that Pogosian has been in immigration custody since January 9, 2026.  *See* Opposition 1:2-3.  However, Pogosian's Exhibits include immigration documents showing that Pogosian was re-detained by ICE on February 19, 2026.  *See* Exhibit 6.  At this stage of the litigation and in view of Respondents' lack of documentation supporting their representation, the Court relies on Pogosian's Exhibits.

[11]    Exhibit 6.

[12]    Application ¶ 9.

[13]    *Id.* at ¶ 23.

**B.    Procedural History**

On March 17, 2026, Pogosian filed the instant Application for a TRO as a part of his petition for writ of habeas corpus.  In his Application, Pogosian seeks the following relief:

- an order for his immediate release; or
- in the alternative, an order directing Respondents to provide him with a prompt and constitutionally adequate bond hearing.[14]

## II.  LEGAL STANDARD

The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  *See Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them.  Fed. R. Civ. P. 65(d)(2).

A party seeking a TRO or a preliminary injunction must establish four elements:  "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction."  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir.), *as amended* (Mar. 11, 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  When the nonmoving party is a governmental entity, the last two *Winter* factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

---

[14]    *Id.* at ¶ 50.

-4-

"The court may issue a preliminary injunction only on notice to the adverse party."  Fed. R. Civ. Pro. 65(a)(1).

## III.  ANALYSIS

Here, all parties are on notice and Respondents have been given the opportunity to respond in writing to Pogosian's Application.  Accordingly, the Court treats Pogosian's Application as a request for a preliminary injunction and **GRANTS** it for the reasons stated herein.

Pogosian argues that Respondents violated (1) his procedural Due Process rights by re-detaining him without any justification or pre-detention process; and (2) his statutory right to a bond hearing under 8 U.S.C. § 1226.  Although the Court does not agree that Pogosian is detained pursuant to 8 U.S.C. § 1226, the Court concludes that Pogosian satisfies the *Winter* factors with respect to his Due Process argument and, therefore, that the issuance of a preliminary injunction is appropriate.[15]

### A.    Likelihood of Success on the Merits

First, the Court addresses whether Pogosian's detention is pursuant to 8 U.S.C. § 1225 or § 1226.  Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal" but who are awaiting "a decision on whether [they] are to be removed from the United States."  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1225(b)(2), on the other hand, provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding]."  8 U.S.C. § 1225(b)(2)(A).  Here, although Pogosian was re-detained within the United States, he was initially detained at the border

---

[15]    *See generally id.*

-5-

when he presented himself for admission. In view of that fact, the Court concludes that Pogosian is an applicant for admission seeking admission, and his initial detention was instituted pursuant to 8 U.S.C. § 1225. Pogosian's re-detention while he was present in the United States pursuant to his admittance under his Form I-94 does not convert the nature of his detention to one under 8 U.S.C. § 1226. Accordingly, the Court concludes that Pogosian is not likely to succeed on the merits of his statutory claim.

The Court next turns to Pogosian's Due Process argument. Due Process rights extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (citation modified)). Whether detained pursuant to 8 U.S.C. § 1225 or § 1226, Pogosian fits that description.

Thus, the outstanding question is "what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The constitution typically requires some kind of a hearing before the State deprives a person of liberty or property, particularly because the loss of liberty cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (citation and quotation omitted). When determining what procedures are required by Due Process, a court applies the three-part *Mathews* test, which involves an analysis of the following: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation" without additional procedures; and "the probable value . . . of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

-6-

### 1.    Private Interest at Stake

When determining the private interest at stake, the court looks to the degree of potential deprivation.  *See Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir. 2015).  Here, the degree of potential deprivation is high because Pogosian has been completely deprived of physical liberty.  Because the degree of potential deprivation is high, this factor favors Pogosian.

### 2.    Risk of Erroneous Deprivation

"Due Process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk."  *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing *Zadvydas*, 533 U.S. at 690–94)).  Here, despite the fact that Pogosian's Form I-94 expressly authorizes his admittance until October 7, 2026,[16] Respondents arrested Pogosian outside of his home in February 2026 and took him into immigration custody without providing notice or justification.  Compounding that lack of process, Respondents have continued to deny Pogosian any meaningful post-detention explanation for his arrest or any opportunity to contest his detention before a neutral decisionmaker.[17]  Without any justification for re-detention or pre-deprivation process, the risk of erroneous deprivation is high.  Therefore, this factor favors Pogosian.

### 3.    The Government's Interest

To determine the Government's interest, the Court must look at the function involved and the fiscal and administrative burdens imposed by the additional procedures.  Here, the Court finds that the Government's interest in detaining Pogosian without providing him with notice and a hearing is minimal

---

[16]    Exhibit 5.

[17]    The March 16, 2026, hearing before an IJ did not provide Pogosian with a meaningful opportunity to be heard because the IJ concluded that Pogosian was subject to mandatory detention under 8 U.S.C. § 1225.  *See* Application ¶ 23.

because the effort and cost required to provide Pogosian with those procedural safeguards is minimal. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Because the Government's burden is low, this factor favors Pogosian.

The Court, having found that all of the *Mathews* factors favor Pogosian, concludes that procedural Due Process requires a pre-deprivation notice of the reasons for re-detention and a prompt hearing before a neutral arbiter.

Accordingly, because Respondents denied Pogosian constitutionally required pre- and post-deprivation due process, the Court concludes that Pogosian is likely to succeed on the merits of his procedural Due Process claims.

**B.      Irreparable Harm**

Pogosian has been detained without the procedures or notice required by the Due Process Clause of the Constitution. Thus, he has been deprived of process in a manner that likely violates his constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Accordingly, the Court finds that Pogosian would be immediately and irreparably harmed by the continued deprivation of his liberty without constitutionally mandated due process.

**C.      Balance of Equities and Public Interest**

Because Pogosian challenges actions and a policy that are likely in violation of his constitutional rights, both the equities and the public interest favor the issuance of a preliminary injunction. *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) ("[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue."). Furthermore, "[g]enerally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the

Constitution." *Zhang v. Barr*, 612 F. Supp. 3d 1005, 1017 (C.D. Cal. 2020). Accordingly, the Court concludes that both factors weigh in favor of Pogosian.

Thus, because the *Winter* factors all weigh in Pogosian's favor, the Court **GRANTS** Pogosian's Application.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Pogosian's instant Application [ECF No. 1] is **GRANTED**.

2.      Respondents are **PRELIMINARILY ENJOINED** from continuing to detain Pogosian.  Respondents are **DIRECTED** to release Pogosian **FORTHWITH** under the terms and conditions of his existing release, as if Pogosian had not been detained.  This Order does not provide Pogosian with blanket immunity from future detention—that relief is likely beyond the Court's jurisdiction—but any future enforcement actions after release must comply with Due Process requirements.

3.      To the extent that Pogosian seeks other relief in his Application, such relief is **DENIED without prejudice**.

4.      Pursuant to General Order No. 05-07, further proceedings on the merits of Pogosian's Application are **REFERRED** to the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

Dated:___April 8, 2026___

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-9-